# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DONNELLA BARRON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civ. Action. No.:** |
| v. ) | **2:05-CV-2193-VEH** |
| ) | |
| **MICHAEL J ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY ADMINISTRATION** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Before the court is the Motion of Defendant, Commissioner of the Social Security Administration (hereinafter "Defendant"), for Summary Judgment on the claims of Alice J. Page (hereinafter "Plaintiff"). (doc. 35). The court also has before it Defendant's Motion to Strike Plaintiff's Affidavit. (doc. 50).

Having considered the briefs and evidentiary submissions, the court finds that Defendant's Motion for Summary Judgment is due to be **GRANTED** for the reasons outlined below. The court also finds that Defendant's Motion to Strike is due to be **DENIED** for the reasons outlined below.

## I.    FACTUAL HISTORY[1]

Plaintiff entered employment with Defendant on January 6, 1985, at Defendant's Southeastern Program Service Center in Birmingham, Alabama. (doc. 1 ¶ 23; AF No. 1).[2]  At the time of this action, she worked as a Legal Administrative Specialist.[3]  (Id., ¶ 24; AF No. 1; AAF No. 14).

Plaintiff suffers from degenerative bone disease and congestive heart failure. (doc. 1, ¶ 25).  She uses a cane and a walker because she has difficulty walking. (Id., ¶ 26).  Defendant supplied her with a wheelchair to use in her office in 1986 and a motorized scooter in 1993.[4]  (doc. 1 ¶ 29).

---

[1] These are the facts for summary judgment purposes only.  They may not be the actual facts.  See *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted).  Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[2] The designation "AF" stands for "admitted fact" and indicates a fact offered by Defendant that Plaintiff has admitted in her written submissions on summary judgment. Whenever Plaintiff has adequately disputed a fact offered by Defendant, the court has accepted Plaintiff's version. The court's numbering of admitted facts (e.g., AF No. 1) corresponds to the numbering of Defendant's Statement of Facts as set forth in Doc. 38 and responded to by Plaintiff in Doc. 45.  Similarly, the designation "AAF" refers to "additional admitted fact" and corresponds to Plaintiff's Statement of Facts contained in Doc. 45 and responded to by Defendant in Doc. 53.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

[3] Plaintiff's position is also entitled "Benefits Authorizor."  (AAF No. 14).

[4] Defendant alleges that it provided Plaintiff with a wheelchair in 1992 and a scooter in 1996.  Plaintiff's office building contains eleven floors and a basement.  (AAF No. 8).  The cafeteria is located on the first floor.  (Id.).  The building contains twelve elevators.  (Id).  It is not

In May 2003, Defendant issued a memorandum to its disabled employees, explaining that it would no longer provide them with scooters except in cases where a scooter qualified as a reasonable accommodation. (AF Nos. 15-16). On December 5, 2003, Defendant reclaimed Plaintiff's scooter.[5] (AF No. 76). She obtained her own scooter in July 2004. (AF No. 78).

## II.  PROCEDURAL HISTORY

Plaintiff initiated this lawsuit on October 24, 2005 by filing her complaint in this court.[6] **(**doc. 1). The complaint asserts that Defendant failed to reasonably accommodate her disability in violation of the Disability Discrimination Rehabilitation Act, 29 U.S.C. § 701, *et seq*. Plaintiff asserts this court's jurisdiction

---

clear from the record on which floor Plaintiff worked.

[5] It is unclear from the record whether Plaintiff requested that she retain her scooter as a reasonable accommodation. On July 30, 2003, she wrote a letter to Defendant, in which she expressed her disagreement with its decision to reclaim the scooters. (AF No. 33). Defendant alleges that it considered Plaintiff's letter an implied request to retain her scooter. (doc. 38, ¶ 34). Plaintiff denies that Defendant treated the letter as a request, but alleges that Defendant allowed her to keep the scooter after she provided it with medical documentation regarding her disability. (doc. 45, ¶¶ 34, 22-26). She asserts further that, in October 2003, Defendant decided to reclaim her scooter. (Id., ¶ 23). On November 12, 2003, she received a letter from Doug France, Equal Employment Specialist and Senior Advisor in Defendant's Center for Disability Services, informing her that her scooter would be reclaimed. (AF No. 62).

[6] Plaintiff filed her Complaint with two other named plaintiffs to this action, Donnella Barron and Joyce Conway. (doc. 1). Defendant has filed separate Motions for Summary Judgment on the claims of each plaintiff. (docs. 33, 34, 35). The court's Memorandum Opinion considers only the claims of Plaintiff Alice Page. The claims of Plaintiffs Barron and Conway will be addressed in separate memorandum opinions and orders entered by the court.

over her claims under 28 U.S.C. §§ 1343 and 1346. She asserts that venue is proper under 28 U.S.C. § 1391(e).

In its Motion for Summary Judgment, Defendant argues that it is entitled to judgment as a matter of law as to any claims against it because there exists no genuine issue of material fact. (doc. 35). The parties have filed briefs and evidentiary submissions in response to Defendant's motion.[7] (docs. 38, 45, 53).

Both the Motion for Summary Judgment and the Motion to Strike Plaintiff's Affidavit are considered herein.

## III.  STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those

---

[7] Defendant also filed Motions to Strike the Affidavits of each plaintiff in this case. (docs. 48-50). Plaintiffs filed Responses in Opposition to Defendant's Motions to Strike (docs. 55-57), and Defendant has replied to the plaintiffs' oppositions (docs. 58-60). Defendant's Motions to Strike the Affidavits of Plaintiffs Barron (doc. 48) and Conway (doc. 49) will not be discussed in this memorandum opinion. They will be addressed in the memorandum opinions applicable to those respective plaintiffs' claims.

portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the

burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving

party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.   ANALYSIS

§ 504 of the Rehabilitation Act of 1973 prohibits federal agencies from discriminating against "otherwise qualified" disabled employees.[8]  29 U.S.C. § 794(a). Plaintiff alleges that Defendant discriminated against her by failing to reasonably accommodate her disability.

To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate that she (1) is disabled or perceived to be disabled; (2) is a "qualified individual," i.e., she is qualified for and can perform the essential functions of her

---

[8] Discrimination claims brought under the Rehabilitation Act are governed by the same standards as claims brought under Title I of the Americans with Disabilities Act of 1990 (hereinafter "ADA"). See *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n. 2 (11th Cir. 1997).

position with or without accommodation; and (3) was discriminated against on the basis of her disability. *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003). Plaintiff must also show that a reasonable accommodation exists. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

Defendant argues that Plaintiff cannot show she was denied a reasonable accommodation. Under the ADA, an employer may be liable for failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . ." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation includes

> (1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities, and (2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodation for individuals with disabilities.

42 U.S.C. § 12111(9).

> [T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable.

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).

"[T]he use of the word 'reasonable' as an adjective for the word

'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart*, 117 F.3d at 1285. "[P]laintiff does not satisfy her initial burden by simply naming a preferred accommodation–even one mentioned in the statute or regulations; she must show that the accommodation is 'reasonable' given her situation." *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998), citing *Stewart*, 117 F.3d at 1286. Plaintiff must prove that the accommodation is reasonable to establish her prima facie case. *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997).

Plaintiff argues that a scooter is a reasonable accommodation. However, a motorized scooter is a reasonable accommodation only if it enables Plaintiff to perform the essential functions of her job. *Lucas v. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). "Essential functions" are fundamental job duties, as opposed to "marginal functions." 29 C.F.R. § 1630.2(n)(1); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998). Determining whether a particular job duty is an essential function requires a factual inquiry to be conducted on a case-by-case basis. *Lucas*, 257 F.3d at 1258.

"[C]onsideration shall be given to the employer's judgment . . . and if an employer has prepared a written description . . . for the [claimant's] job, this description shall be considered evidence of the essential functions of the job." *Lucas*,

257 F.3d at 1258, citing *Earl*, 207 F.3d at 1365.

Defendant reclaimed Plaintiff's scooter because it believed she did not need it to perform her essential job functions.[9] (AF No. 61). Plaintiff argues that she was initially given the scooter as a reasonable accommodation because it enabled her to move about her office building. Defendant denies that the scooter was ever a "reasonable" accommodation, claiming instead that it offered her the scooter as a "courtesy."

Regardless of whether Defendant or Plaintiff considered the scooter to be a "reasonable" accommodation, the record demonstrates that the scooter is not a reasonable accommodation in this case, because Plaintiff does not need it to perform

---

[9] Plaintiff does not specifically respond to this argument. Her response to this point is, at best, limited and vague. She appears to argue that she does not have to prove that a reasonable accommodation exists, i.e., that a scooter need not enable her to perform her essential job functions. Rather, she must only suggest the existence of a "plausible accommodation," the costs of which do not clearly exceed its benefits. See *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998).

This argument directly conflicts with Eleventh Circuit binding precedent, which clearly requires Plaintiff to show that a reasonable accommodation exists. See *Stewart*, 117 F.3d at 1286. The court, therefore, rejects Plaintiff's request that a less stringent standard be applied to to her case than that which has been clearly set forth by the Eleventh Circuit Court.

Furthermore, Plaintiff argues that Defendant suffers no undue burden by providing her with a scooter. Plaintiff mistakes the issue at hand; Defendant need not demonstrate that providing a scooter is an undue burden until after Plaintiff has shown that a scooter is a reasonable accommodation. See *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). Because the court finds that a scooter is not a reasonable accommodation in this case, it is not necessary for Defendant to show that providing her with a scooter is an undue burden.

her essential job functions. Her job duties include

> making final determinations on the full range of postadjudicative actions, entitlement and non-entitlement to benefits, and . . . payment amounts; examin[ing] incoming correspondence and determinations of awards, mak[ing] final determinations to adjust, resume, reinstate, suspend, withhold, and/or terminate benefits and comput[ing] the benefit payment rates; answer[ing] the 800 number and respond[ing] to telephone calls from the public; and examin[ing] reasons for complex and varied computer program exceptions, alerts, and other computer program problems.

(AF No. 24; Def's exh. 47).

Plaintiff does not contend that she requires a scooter to perform these duties. She argues instead that she performs additional duties, such as attending meetings throughout her building, making photocopies, obtaining supplies, and visiting the library, which necessitate her use of a scooter.

Plaintiff's supervisor, James Nicolls (hereinafter "Nicolls"), testified that Plaintiff does not need a scooter to perform her job. (Nicolls Dep. at 10). She must leave her desk only to retrieve output from a printer and to attend meetings once or twice each month. (Id.).

Plaintiff does not dispute that her job duties are "primarily sedentary." (AF No. 26). She was given an adjustable chair and her own printer to accommodate her disability while she worked at her desk. (AF No. 52). She does "a lot of sitting at [her] desk" and "can perform the essential functions of [her] job with or without

11

accommodation, because [she] must use [her] brain and mental ability to perform the duties of [her] position." (AF Nos. 28, 36; Def.'s exh. 25, ¶ 14). She does not need a scooter while she works at her desk. (AF No. 45).

After her scooter was reclaimed, she did not attend mandatory meetings because it was too painful for her to walk to them. (AAF Nos. 40, 42). However, she was never disciplined for missing these meetings, and she was able to retrieve notes from the meetings from her coworkers. (AF No. 65). Plaintiff was also unable to go to the library to research documents that she could not find on her computer.[10] (Page

---

[10] Plaintiff testified to these facts in her affidavit (doc. 46, exh. 15). In its Motion to Strike Plaintiff's Affidavit (doc. 50), Defendant argues that the affidavit contains facts that Plaintiff neglected to mention in her prior discovery responses, where she was subject to cross-examination by Defendant.

Defendant cites to *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, in which the court found that an affidavit is properly stricken when it contradicts, without explanation, the affiant's prior discovery submissions. 736 F.2d 656 (11th Cir. 1984).

The court finds no contradiction between Plaintiff's affidavit and her prior discovery submissions. The affidavit merely adds information that was not contained in her discovery responses.

Nevertheless, Defendant argues that Plaintiff was under a duty to supply this information during discovery. FED. R. CIV. P. 26(e)(2) provides that "[a] party is under a duty seasonably to amend a [discovery response] if the party learns that the response is in some material respect <u>incomplete</u> or incorrect and if the additional or corrective information has <u>not otherwise been made known to the other parties</u> during the discovery process or in writing." (Emphasis added).

In *Hancock v. Hobbs*, an affidavit was properly stricken under FED. R. CIV. P. 26(e)(2) because it contained information not disclosed to the opposing party during discovery. 967 F.2d 462, 468 (11th Cir. 1992).

Without determining whether Plaintiff's affidavit should be stricken on the basis of *Hancock*, the

Aff. ¶ 30). She was able to ask a coworker to go to the library for her.

Despite Plaintiff's argument that her job was "substantially impacted" after her scooter was reclaimed, the record is void of evidence that her job performance suffered. She does not dispute that she consistently received satisfactory performance reviews. (AF No. 77).

Even if Plaintiff required a scooter to perform her essential job duties, Defendant argues that it is not obligated to supply her with one because, in her case, a scooter constitutes a personal use item. According to Defendant, "if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide." See 29 C.F.R. § pt. 1630, app. § 1630.9.

The record indicates that Plaintiff needs a mobility device away from work as well as in her office. She uses a cane in her home, and clings to furniture and walls to move about. (Page Aff. ¶ 24). She does not cook or perform household chores because of her limited mobility. (AF No. 41). Her husband assists her with getting into and out of her bathtub. (AF No. 42). When she shops, she usually visits stores

court finds that the affidavit does not create a genuine issue of material fact as to whether the scooter is a reasonable accommodation that Defendant must provide for Plaintiff. Therefore, Defendant's Motion to Strike Plaintiff's Affidavit is due to be **DENIED** as **MOOT** because, even considering that evidence, Defendant is still entitled to summary judgment.

that offer scooters to disabled patrons. (AF No. 43). When she visited relatives in Michigan in 1991, her sister ordered a wheelchair for her to use during her stay. (Page Dep. at 15).

In *Moos v. Commissioner, Soc. Sec. Admin.*, 2004 WL 1494534 (E.E.O.C. Jun. 24, 2004), an employer was not required to provide a wheelchair to its disabled employee because the employee needed the wheelchair both at work and outside his office. Similarly, Plaintiff requires a mobility device in her work and outside her office.

Plaintiff argues that *Moos* is distinguishable from her case because the claimant there used a wheelchair in his home as well as at work. Plaintiff cannot use a scooter in her home. (Page Aff. ¶ 24). She does not explain why she cannot use one at home, but she also has not argued that she has no need for a scooter in her house. Instead, she argues that "there is no comparison between her mobility situation at home" and her mobility at work, given the difference between the size of her two-bedroom apartment and her eleven-story office building. Plaintiff seems to imply by this argument that she requires a scooter to move about her office building but does not need a scooter outside her work. The record is clear, however, that Plaintiff uses scooters and other mobility devices outside her workplace. The court is unconvinced that *Moos* is distinguishable from her case, and agrees with Defendant that a scooter,

14

under these circumstances, constitutes a personal use item.[11]

Defendant has offered alternative accommodations that are reasonable in Plaintiff's circumstances. Plaintiff is allowed to purchase her own scooter and bring

---

[11] Defendant also argues that the fact that it supplied Plaintiff with a scooter in the past does not obligate it to continue doing so indefinitely. Indeed, prior accommodations do not make an accommodation reasonable or require an employer to continue that accommodation permanently. See *Wood*, 323 F.3d at 1314; *Holbrook*, 112 F.3d at 1528. An employer is also not required to continue providing an accommodation that exceeds the requirements of the law. See *Holbrook*, 112 F.3d at 1528. Defendant's provision of a scooter to Plaintiff exceeded the legal requirements because, in her case, the scooter is a personal use item. The court agrees with Defendant that it need not be required to continue supplying the scooter to Plaintiff simply because it has done so in the past.

Plaintiff also attempts to support her argument by offering an email written by Miguel Castillo (hereinafter "Mr. Castillo"), a regional "EEO" Manager at Defendant's Western Program Service Center, to Jan Keith, who apparently works in Defendant's Southeastern Program Service Center. (Pl.'s exh. 22). Neither the duties of an "EEO Manager" nor the location of Mr. Castillo's office are clear from the record. The email appears to have been in response to an inquiry by Defendant's Southeastern Program Service Center in Birmingham, regarding the Western Service Center's practice of offering scooters to its disabled employees. (Pl.'s exh. 22).

Mr. Castillo's email reads in relevant part: "[Defendant] used to take the position that . . . scooters are a personal accommodation and therefore not a reasonable accommodation. . . . Someone in the decision chain seems to have finally realized that a mobility impaired employee can probably negotiate around a 2,000 square foot house without a scooter, but may have problems getting around a million square foot building. We [i.e., the Western Service Center] don't get into the fine line of 'are you now more disabled tha[n] you used to be and should therefore buy your own scooter.' I can't imagine how you would begin to make that determination and I can already imagine the civil rights complaints that would result." (Pl.'s exh. 22).

Plaintiff argues that Mr. Castillo's email weighs heavily in support of her argument that a scooter is a reasonable accommodation and not a personal use item. However, she does not explain how Mr. Castillo's opinion has any legal relevance to her claims. She has failed to demonstrate that Mr. Castillo exercises policy-making authority regarding the use of scooters among Defendant's employees at its Southeastern Program Service Center. Without a showing that Mr. Castillo's opinion is relevant to her claim, the court cannot agree with Plaintiff that the email supports her case.

it to work with her. (AF No. 49). Defendant offered to ensure that her workstation is scooter-accessible. (AF No. 75). See *Chausse v. National Security Agency*, 2003 WL 21516438 (E.E.O.C. Jun. 25, 2003) (an employer provides a reasonable accommodation by allowing a disabled employee to bring his own scooter to work and by ensuring that the work site is scooter-accessible).

Plaintiff finally argues that, notwithstanding the fact that she can perform her job without a scooter, Defendant is obligated to supply one to her because it would allow her to live a normal life. She cites to *Nawrot v. CPC International*, 259 F.Supp.2d 716, 726 (N.D.Ill. 2003) and *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) in support of this argument. According to Plaintiff, Defendant should enable her to enjoy "equal benefits and privileges" that are enjoyed by her non-disabled coworkers. See 29 C.F.R. § 1630.2(o)(1)(iii)(1995). Defendant must therefore provide Plaintiff with access to the cafeteria, employee lounges, restrooms, meeting rooms, and other employer-sponsored services, such as health programs, transportation, and social events.

According to Plaintiff, she was not able to enjoy equal privileges of employment with Defendant as her non-disabled coworkers. After her scooter was reclaimed, she stopped going to the cafeteria because it was too painful for her to leave her desk. (Page Aff. ¶ 10). She could view the cafeteria menu online and

sometimes asked her coworkers to bring food back for her. (Id., ¶ 11). However, she missed being able to view the food herself to decide what she wanted, and could only hope that the food was a good as it sounded. (Id.). Plaintiff also missed baby showers and retirement parties in her building. (Id., ¶ 15). She took breaks at her desk to avoid walking to the employee lounge. (Id., ¶ 17). She missed being able to go outside during the spring and summer months during her breaks. (Id., ¶ 19). She was unable to go to the library to relax when she wanted to, and stopped going to the company store on the first floor of her building. (Id.).

Plaintiff also argues that she felt trapped at her desk while her coworkers were able to freely move about their offices. She did not attend optional programs in her building, such as a Martin Luther King presentation. (Page Aff. ¶ 14). She remained at her desk unless she needed to use the restroom. (Id., ¶ 12). She often struggled to reach the restroom in time, and suffered several accidents that led her to wear urine protection pads under her clothing. (Id., ¶ 9). Plaintiff argues that, unlike her non-disabled coworkers, she is unable to enjoy her job. She claims she felt "singled out, embarrassed, and humiliated" after her scooter was removed from her office. She felt unsafe in her building because she could not evacuate as quickly as her non-disabled coworkers in the event of an emergency. (Page Aff. ¶ 22).

Despite these arguments, the court finds that Defendant has enabled Plaintiff

17

to enjoy the privileges of her employment without providing her with a scooter. As previously stated, Plaintiff is allowed to bring her own scooter to work. (AF No. 49). Plaintiff offers no evidence or authority explaining why this accommodation is insufficient in her case. The court is, therefore, not persuaded by Plaintiff's argument that Defendant can fulfill its obligation to her only by providing her with a scooter.

Plaintiff concludes her argument by alleging that her disabled coworker retained her scooter after Plaintiff's was reclaimed. Plaintiff refers to Necole Langum (hereinafter "Ms. Langum"), who works for Defendant as a module secretary. (Pl.'s exh. 11). Ms. Langum's essential job functions require her to deliver reports throughout Defendant's building several times each day, collect management data at "specific scientifically determined times," and carry a notebook to each employee in her unit to determine what employees are working on at certain times.[12] (Pl.'s exh. 11).

Ms. Langum's ability to perform these functions is "vitally important to [Defendant's] determinations that impact [its] budget, staffing and overtime allocations." (Id.). However, Ms. Langum is a double amputatee and has used prosthetic limbs and crutches to navigate Defendant's building. (Pl.'s exh. 11). Her

---

[12] Ms. Langum's unit includes more than fifty employees whose work locations are spread over a "large work area." (Id.).

supervisor, Ms. Barr, recommended that Ms. Langum receive a scooter to enable her to perform the essential functions of her job. (Id.). According to Ms. Barr, Ms. Langum cannot perform her job without a scooter. (Id.).

Plaintiff's circumstances are distinguishable from those of Ms. Langum. Plaintiff does not require a scooter to perform her essential job functions. (AF No. 36). On the contrary, she can perform her essential job duties from her desk. (Id.).

Doug France testified that, on some occasions, the Rehabilitation Act requires an accommodation to be made for a disabled employee without regard to whether it enables the employee to perform his or her essential job functions. (France Dep. at 125). Plaintiff alleges that no consideration was given to her on this basis. However, even if Plaintiff's circumstances constituted one of these occasions, she has failed to demonstrate that Defendant did not reasonably accommodate her by allowing her to bring her own scooter to work.[13]

While Plaintiff might benefit from having a scooter at work, she has not shown that she is entitled to a scooter at Defendant's expense. The court finds that Defendant has reasonably accommodated her disability.

## V.   CONCLUSION

---

[13] Plaintiff argues that summary judgment is "clearly inappropriate" because Defendant stored her scooter in a warehouse after reclaiming it. Plaintiff does not explain how this argument is relevant to the issue whether a scooter is a reasonable accommodation in her case.

Plaintiff has failed to present a prima facie case of disability discrimination under the Rehabilitation Act. Consequently, the court finds that Defendant's Motion for Summary Judgment is due to be **GRANTED**. A separate Order will be entered.

**DONE** and **ORDERED** this the 11th day of June, 2007.

                                             **VIRGINIA EMERSON HOPKINS**
                                             United States District Judge